# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-11509

United States Court of Appeals
Fifth Circuit

**FILED**
November 15, 2018

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

AVNIEL AWAN ANTHONY,

Defendant-Appellant

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:16-CR-128-1

**ON REMAND FROM THE UNITED STATES SUPREME COURT**

Before STEWART, Chief Judge, and DENNIS and WILLETT, Circuit Judges.

PER CURIAM:[*]

Defendant-Appellant Avniel Awan Anthony appeals his 72-month, above-guidelines, sentence for making a false statement in a passport application. For the following reasons, we affirm.

### I. Facts & Procedural History

Anthony pled guilty to making a false statement in a passport application in violation of 18 U.S.C. § 1542. The presentence report (PSR)

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

calculated an advisory sentencing range of 15 to 21 months, based on an offense level of 10 and a criminal history category of IV.  Anthony's offense level was determined by applying a two-level enhancement, under U.S.S.G. § 3C1.1, for obstruction of justice and another two-level enhancement, under U.S.S.G. § 3C1.2, for reckless endangerment during flight from a police officer. These Chapter Three enhancements were predicated on Anthony's actions while in police custody at a Mexican airport awaiting extradition to the United States on the instant charge. There, Anthony was handcuffed and detained in a room at the Cancun airport. Officers left him in the room alone and he removed his handcuffs and climbed through the ceiling tiles into the airport's ventilation system. After forty-five minutes of climbing through the ducts in the ceiling, Anthony fell through the ceiling onto a baggage claim turnstile, where he was re-apprehended.

The PSR recommended an enhancement under § 3C1.1 because Anthony "was already in the custody of law enforcement" and his behavior was "indicative of an attempt to escape law enforcement custody." It also recommended an enhancement under § 3C1.2 because airports "are highly populated areas" and people in the airport "could have been harmed if [Anthony] had fallen through the ceiling onto them."  Anthony filed objections to the PSR, but did not object specifically to the Chapter Three enhancements.

At sentencing, the district court sustained Anthony's oral objection to the calculation of his criminal history score on grounds unrelated to this appeal and reduced his criminal history category from IV to III. With a revised criminal history category, his final guidelines range was 10 to 16 months. Subject to those changes, the district court adopted the findings of the PSR. After hearing argument from Anthony and his counsel, the district court determined that a guidelines sentence was inadequate because Anthony "has

No. 16-11509

a long history of violence," including convictions for attempted murder, sexual assault, and aggravated robbery, some of which received no criminal history points. Taking into account the 18 U.S.C. § 3553(a) factors, the district court sentenced Anthony to 72 months of imprisonment, followed by two years of supervised release. Anthony filed this appeal.

## II. Discussion

Anthony makes two primary arguments on appeal. He first contends that the district court committed reversible plain error in calculating his guidelines range by applying separate enhancements for obstruction of justice and reckless endangerment based solely on the same conduct—namely, his attempt to escape police custody by crawling into, and subsequently falling from, the airport ventilation ducts. *See* U.S.S.G. §§ 3C1.1; 3C1.2. Second, he asserts error because the district court's Statement of Reasons (SOR) orders his sentence to run consecutively to his sentences on unrelated state charges, whereas the court's oral pronouncement of the sentence did not mention consecutive sentences. We address each issue in turn.

*Chapter 3 Enhancements*

As Anthony concedes, he did not object in the district court to the § 3C1.1 and § 3C1.2 enhancements so appellate review of this issue is for plain error. *See United States v. Warren,* 720 F.3d 321, 332 (5th Cir. 2013). To prevail on plain error review, Anthony must identify (1) a forfeited error (2) that is clear or obvious, rather than subject to reasonable dispute, and (3) that affects his substantial rights. *See Puckett v. United States*, 556 U.S. 129, 135 (2009). If he satisfies the first three requirements, this court may, in its discretion, remedy the error if the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id.* This court has recently acknowledged that "[w]ith regard to the fourth prong of plain-error review, the Supreme

3

No. 16-11509

Court reasoned in *Rosales-Mireles v. United States* that proof that a district court relied on a miscalculated guidelines range 'will in the ordinary case . . . seriously affect the fairness, integrity, or public reputation of judicial proceedings, and thus will warrant relief' under the fourth prong of plain-error review." *United States v. Fuentes-Canales*, 902 F.3d 468, 476 (5th Cir. 2018) (quoting *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1903 (2018)). Nevertheless, "the Court recognized that '[t]here may be instances where countervailing factors satisfy the court of appeals that the fairness, integrity, and public reputation of the proceedings will be preserved absent correction.'" *Id.*

Section 3C1.1 provides for a two-level enhancement if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction." Conduct covered under § 3C1.1 includes "escaping or attempting to escape from custody before trial or sentencing." § 3C1.1, cmt. n.4(E). Section 3C1.2 provides for a separate two-level enhancement if "the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer."

"[T]he Guidelines do not prohibit double counting except when the particular Guideline at issue expressly does so." *United States v. Luna*, 165 F.3d 316, 323 (5th Cir. 1999). To that end, the commentary to § 3C1.2 instructs that an enhancement may not be applied if "another adjustment in Chapter Three, results in an equivalent or greater increase in offense level solely on the basis of the same conduct." § 3C1.2, cmt. n.1. In determining whether multiple enhancements are based solely on the same conduct, this court has followed the lead of other circuits by "focus[ing] on the temporal and spatial

4

distinctiveness or separateness of the acts" to discern "whether the defendant's conduct involves more than one culpable act." *United States v. Gillyard*, 261 F.3d 506, 511 (5th Cir. 2001).

Anthony asserts that, in applying enhancements under both § 3C1.1 and § 3C1.2, his entry into and sudden exit from the airport ceiling were erroneously treated as distinct acts. He contends that his entering into, crawling around, and falling from the airport ventilation system comprised a single act of "trying to escape from the room in which he was detained."[1] As a result, Anthony argues, he should have only received one of the 2-level Chapter 3 enhancements which would have yielded a guidelines range of 6 to 12 months rather than a range of 10 to 16 months. We disagree.

The relevant commentary to § 3C1.2 provides that an enhancement may not be applied if the defendant received an equal or greater offense level increase under § 3C1.1 "solely on the basis of the same conduct." § 3C1.2, cmt. n.1. In *Gillyard*, this court held that the defendant's conduct during his high-speed flight from police supported dual enhancements for reckless endangerment and assaulting a law enforcement officer where, "at different times and in different places" during the chase, the defendant nearly swerved into a group of construction workers and almost collided with a pursuing police car. 261 F.3d at 507–08, 511. In that case we observed that "courts that have addressed the issue of double enhancements for different aspects of a criminal transaction have focused on the temporal and spatial distinctiveness or

---

[1] Anthony also argues that since he was already in custody at the time of the relevant conduct, the double-enhancement error is "especially plain" because § 3C1.2 does not apply to conduct occurring after a defendant's capture. We disagree. The guideline only requires that a substantial risk of bodily injury to another be created "in the course of fleeing from a law enforcement officer." § 3C1.2. The fact that § 3C1.2 ordinarily applies to conduct involving "avoiding or fleeing from arrest" has no bearing on whether § 3C1.2 can be applied to post-arrest conduct.

separateness of the acts in determining whether the defendant's conduct involves more than one culpable act." *Id.* at 511.

Similarly, in *United States v. Bocanegra-Rodriguez*, 336 F. App'x 430, 430–31 (5th Cir. 2009), this court affirmed separate enhancements for reckless endangerment and recklessly creating a risk of serious bodily injury to another during the commission of an alien smuggling offense. Both enhancements were based on the defendant's attempt to flee from police in a van overcrowded with illegal aliens because we determined that "the risk caused by the overcrowding was distinct from the risk posed by [the defendant's] reckless driving during flight." *Id.* at 431. We further reasoned that "[the defendant's] reckless driving created a risk of danger to people besides the van passengers." *Id.*

In *United States v. Cabral-Castillo*, 35 F.3d 182, 188–89 & n.8 (5th Cir. 1994), however, we held that the defendant's act of driving his car at high speed toward a Border Patrol agent did not support enhancements for both reckless endangerment and use of a deadly weapon (i.e., the car) because the enhancements were "clearly" based on the same conduct. There, this court noted that the events that transpired took place "[w]ithin a short time." *Id.* at 184.

Our reasoning in *Gillyard* and similar cases suggests that Anthony has failed to show that the district court erred in applying both Chapter 3 enhancements given the "temporal and spatial distinctiveness or separateness of the acts" upon which the enhancements were applied. 261 F.3d at 511. In applying the 2-level enhancement under § 3C1.1 (escape), the PSR provided that "[w]hile alone in the room, [Anthony] removed his handcuffs and fled through the ceiling tiles of the room into the ventilation system of the airport [where he crawled for 45 minutes] in an attempt to evade law enforcement."

Then, in applying the 2-level enhancement under § 3C1.2 (reckless endangerment), the PSR noted that "[d]uring defendant's escape from law enforcement, he crawled through the ceiling and into the air ducts of the [airport and] fell through the ceiling and onto the baggage claim turnstile." The PSR continued that "[a]irports are highly populated areas, and the defendant created a substantial risk of seriously bodily injury to those civilians and law enforcement officers within the airport who could have been harmed if the defendant had fallen through the ceiling onto them."

Although both paragraphs included mention of Anthony crawling through the airport ventilation system, the first paragraph supporting the § 3C1.1 enhancement focused on his initial act of escape by removing the handcuffs, climbing into the ceiling of the holding room, and crawling through the ducts. The second paragraph supporting the § 3C1.2 enhancement picked up forty-five minutes after his initial escape, when he fell through the ceiling onto the baggage claim turnstile, observing the dangerous nature of this event given that he could have harmed anyone standing nearby at the time. It therefore appears that the PSR relied on the "temporal and spatial distinctiveness or separateness of the acts" in recommending the two separate Chapter 3 enhancements. *Gillyard*, 261 F.3d at 511 (noting that "[t]hreats to police and to bystanders that occur at different times and in different places have been viewed as two separate acts worthy of two separate enhancements under the guidelines").

After sustaining Anthony's oral objections to the PSR on unrelated grounds and reducing his criminal history category from IV to III, the district court adopted the factual predicate contained in the remainder of the PSR, as it was within its discretion to do. On this record, we conclude that Anthony has failed to show that the district court plainly erred in applying both Chapter 3

No. 16-11509

enhancements in calculating his sentence. *See Puckett*, 556 U.S. at 135. Moreover, given this circuit's range of authority in these types of cases, even if we were to conclude that Anthony had shown error here, we could not say that the error would be clear or obvious. *Id.*; *Bocanegra-Rodriguez*, 336 F. App'x at 430–31; *Gillyard*, 261 F.3d at 511; *Cabral-Castillo*, 35 F.3d at 188–89 & n.8. In light of this concusion, we need not reach prongs three and four of the plain error analysis. *See Puckett*, 556 U.S. at 135.

Anthony also takes issue with his above-guidelines sentence, emphasizing that it is "450% of the maximum of the Guideline range the district court believed applicable." He argues that "[t]he public reputation of judicial proceedings are not served by allowing a sentence so far in excess of the Guidelines to be imposed accidentally." The record reflects, however, that the 72-month sentence was the result of an intentional above-guidelines variance by the district court, not an accidental sentence within an incorrect higher range.

We review "the district court's decision to depart upwardly and the extent of that departure for abuse of discretion." *United States v. Zuniga-Peralta*, 442 F.3d 345, 347 (5th Cir. 2006). "In imposing an upward variance, 'the district court must more thoroughly articulate its reasons' . . . [and its] reasons should be fact-specific and consistent with the sentencing factors enumerated in [18 U.S.C. §] 3553(a)." *United States v. Hebert*, 813 F.3d 551, 562 (5th Cir. 2015).

Here, the district court explained that a 72-month sentence was necessary because the guidelines range failed to adequately account for the facts of the instant case or Anthony's long history of violent criminal behavior. In explaining its decision to impose the 72-month sentence, the district court, after considering the § 3553(a) factors and the guidelines, stated:

No. 16-11509

> The defendant has a long history of violence . . . [.] First, he was found in Mexico because of an altercation he was involved in on the beach. Second, while being extradited he was yelling and refusing to comply with the officer's instructions causing the officers to remove him from the airplane based upon their view that he needed to be removed for the safety of other passengers. He further had to be sedated to be transported back[.] . . . He has an attempted murder conviction where he shot two people while in custody on this conviction. He committed 60 infractions, including striking an officer, creating a disturbance, threatening an officer, sexual misconduct, assaulting an officer, and fighting. He has also been convicted of aggravated robbery with the use of a gun which received . . . no criminal history points and an assault, bodily injury, where he assaulted the son of his girlfriend while his girlfriend hid in her bedroom closet.

Based on this information, the district court opined that "a sentence of 72 months is appropriate in this case[,]" and "necessary to protect the public from future crimes of the defendant." The district court continued that the sentence was "appropriate to reflect the seriousness of this offense, provide adequate [deterrence], and promote respect for the rule of law." We have upheld similar upward variances based on § 3553(a) factors. *See Hebert*, 813 F.3d at 563 (affirming district court's "significant upward variance from the recommendation in the PSR" in imposing a 92-year sentence after application of the § 3553(a) sentencing factors); *United States v. Brantley*, 537 F.3d 347, 348 (5th Cir. 2008) (affirming a sentence of incarceration 253% higher than the top of the Guidelines range after application of § 3553(a) factors); *United States v. Smith*, 417 F.3d 483, 492–93 (5th Cir. 2005) (affirming a sentence of incarceration nearly 300% higher than the top of the Guidelines range after application of § 3553(a) factors). Further, the district court properly provided a fact-specific explanation, thoroughly articulating its reasons for imposing the upward variance to Anthony's sentence. *See Hebert*, 813 F.3d at 562. Accordingly, we conclude that the district court did not abuse its discretion in

No. 16-11509

imposing the upward variance. *Zuniga-Peralta*, 442 F.3d at 347.

*Consecutive Sentences*

Anthony further argues that there is a discrepancy between the district court's written and oral pronouncements of his sentence with respect to whether his federal sentence is to run consecutively to or concurrently with his state sentences. We disagree.

We review special conditions imposed in a written judgment for abuse of discretion. *United States v. Warden*, 291 F.3d 363, 365 n.1 (5th Cir. 2002). We examine the entire record to determine the district court's intent. *See United States v. McAffee*, 832 F.2d 944, 946 (5th Cir. 1987). The SOR, which is part of that record, clarifies the district court's intent to run Anthony's federal sentence consecutively to his state sentences. *See United States v. Tafoya*, 757 F.2d 1522, 1529 (5th Cir. 1985). Consequently, there is no discrepancy because the district court was silent at sentencing regarding how Anthony's federal and state sentences were to be served, whereas the SOR instructs that they are to be served consecutively. Anthony has failed to show an abuse of discretion. *See Warden*, 291 F.3d at 365 n.1.

### III. Conclusion

Defendant-Appellant's sentence is affirmed.